UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CINCINNATI INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 05181 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| VITA FOOD PRODUCTS, INC., NARDO | ) | |
| OVANDO, and KARINA BAEZ, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this diversity action, Cincinnati Insurance Company seeks a declaratory judgment that it is not obligated either to defend or indemnify Vita Food Products, Inc., in a personal-injury lawsuit filed in state court by Nardo Ovando, an employee of a third-party contractor who fell while working at one of Vita Food's stores, and Ovando's wife, Karina Baez.[1] Cincinnati now moves for summary judgment. For the reasons given below, the motion is granted.

---

[1] The Court exercises subject-matter jurisdiction under 28 U.S.C. § 1332 based on the complete diversity of the parties (Cincinnati Insurance Company is an Ohio corporation with its principal place of business in that state, while Vita Food Products' citizenship is Illinois, as is Ovando's and Baez's). R. 17. In light of the seriousness of the injury alleged in the underlying lawsuit, the amount-in-controversy exceeds $75,000.

## I. Background

On June 30, 2011, Nardo Ovando was working at a Vita Food premises in Chicago when he was injured in a fall. R. 40, PSOF ¶ 5.[2] Ovando was an employee of Painters USA, Inc., which had been retained by Vita Food to carry out contract work on the site. *Id.* ¶ 6. Ovando sued Vita Food for negligence in Cook County Circuit Court, and Baez also brought a loss of consortium claim in the same case. *See* R. 1-2, First Am. Compl., Case No. 12 L 012605. This federal suit turns on whether Cincinnati, which had issued a commercial general liability coverage and commercial umbrella liability policy to Painters for that June 2011 time period, PSOF ¶¶ 9-11, is obligated to cover Vita Food under that policy. Vita Food concedes that it was not an explicitly named insured on Painters' policy with Cincinnati, PSOF ¶ 15, but asserts that it *was* a covered party under the terms of the policy's endorsement of automatic additional insureds, Def.'s Resp. PSOF ¶ 15.

Painters' policy with Cincinnati states in relevant part that:

(1) Any person or organization … whom you [Painters] are required to add as an additional insured under this Coverage Part by reason of:

  (a) A written contract or agreement; or

  (b) *An oral agreement or contract where a certificate of insurance showing that person or organization as an additional insured has been issued*,

---

[2]Citations to the docket are "R." followed by the entry number and, when necessary, the page/paragraph number. Citations to the parties' Local Rule 56.1 Statements of Fact are "PSOF" (for Cincinnati's Statement of Facts) [R.40]; "DSOF" (for Vita Food's Statement of Additional Facts) [R. 41 at 11-12]; Def.'s Resp. to PSOF (for Vita Food's Response to Cincinnati's Statement of Facts) [R. 41 at 1-11]; Pl.'s Resp. to DSOF (for Cincinnati's Response to Vita Food's Statement of Additional Facts) [R. 44]. Where a fact is admitted by the responding party, the Court cites only to the asserting party's Statement of Facts.

2

> *is an insured, provided*:
>
> (a) *The written or oral contract or agreement is*:
>
> > 1) Currently in effect or becomes effective during the policy period; and
> >
> > 2) *Executed prior to an "occurrence" or offense to which this insurance would apply.*

R. 40-1, Painters' Policy at 10-11 (Paragraph 9: Automatic Additional Insures–Specified Relationships) (emphases added). The question is whether Vita Food can show any set of facts by which it was an insured party under these terms, specifically the provision for an oral agreement. In presenting the relevant factual background to resolve the issue, the Court sets forth the following evidence in the light most favorable to Vita Food as the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Sometime before Ovando's fall, Vita Food and Painters entered into an oral agreement for Painters to perform painting services at the Vita Food location in question. DSOF ¶ 1.[3] Following the oral agreement, Painters submitted a written

---

[3] Cincinnati objects to all of Vita Food's Statements of Additional Fact as not complying with Local Rule 56.1. Many of Cincinnati's blanket objections are without basis. For instance, in response to Vita Food's statement that Vita Food and Painters entered into an oral argument for the underlying painting services, Cincinnati offers a premature attack on the sufficiency of the record—targeting a "self-serving" affidavit contradicting prior deposition testimony—on an unrelated point concerning whether the agreement included additional insured coverage for Vita Food. Pl.'s Resp. DSOF ¶ 1. First, it is a "misconception that evidence provided in a 'self-serving affidavit' is never sufficient to thwart a summary judgment motion." *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) ("[A] self-serving affidavit is an acceptable method for a non-moving party to present [otherwise acceptable] evidence of disputed material facts."). Second, the portions of the record Cincinnati points to do not reveal the contradictions alleged (because Cincinnati does not actually respond to the discrete fact raised in the statement). Cincinnati does not therefore properly respond to this fact, which is deemed admitted (in any event, at the summary judgment stage, the Court must view the facts in the light most favorable to Vita Food as the non-moving

proposal to Vita Food offering the terms and conditions of the services. *Id*. Vita Food accepted some of these, but informed Painters that it would not go forward with the project unless Painters made Vita Food an additional insured under Painters' insurance policy; Painters agreed to the condition. *Id*. ¶¶ 2-4.[4] Although Cincinnati disputes that Painters so agreed, it concedes that Peter Cook, vice president of Painters, testified that he "may have" discussed Vita Food's need to be covered by Painters' insurance during contract negotiations. DSOF ¶ 8. The parties agree that there was no written contract or agreement ever signed specifying Vita Food's coverage requirement. DSOF ¶ 7; Pl.'s Resp. DSOF ¶ 7.

With this backdrop in place, fast forward to June 30, 2011. Ovando's fall occurred between around two and four o'clock in the afternoon. PSOF ¶ 21; Def.'s Resp. PSOF ¶ 21. At 4:43 p.m. that same afternoon, according to the record, a

---

party). *See id*. (emphasizing that doing so does not mean the court vouches for their truth) (citation omitted).

[4]Again, Cincinnati objects on the basis that these facts are supported only by a self-serving affidavit by Martin Morse, Vita Food's maintenance manager who was responsible for negotiating third-party contracts, which also contradicts his previous deposition testimony. Pl.'s Resp. DSOF ¶¶ 3, 4. But the testimony cited to by Cincinnati is not in fact contradictory. Morse acknowledged only that "[i]t's not common practice, but it does happen" that projects like the painting work involved here *could* begin before Vita Food was named as an additional insured. R. 40-2, Morse Tr. at 27. This testimony does not conflict with the statement in his affidavit that Vita Food made the request for coverage to Painters for this specific project and that the request in that case was granted.

By contrast, Morse's assertion that, in 2011, as a matter of company policy, it required contractors to provide additional insured coverage before beginning work, DSOF ¶ 5, *does* contradict his earlier deposition testimony, which belied the existence of any such official policy (speaking instead of a vague practice that was not necessarily followed in every case). That assertion is therefore struck. *See Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) (confirming district court's authority to strike a contradictory statement from consideration during summary judgment). Morse also asserted that Vita Food did allow at times contractors to begin work before a certificate of insurance (which apparently Vita Food views as different from the underlying contract or agreement) is issued. DSOF ¶ 6.

4

Painters' employee named Theressa Jirka sent an email to the office of Painters' insurance agent, with the subject line "Urgent Request: Certificate of Insurance." R. 40-3, Theressa Jirka Email; R. 40-2, Cook Tr. at 19-20 (explaining who Jirka is and identifying Painters' insurance agent). The email requested that the agent mail an original and email a copy of the certificate, listing Vita Food as the additional insured on Painters' policy, and reiterated "[n]eeded today if at all possible!!!" Jirka Email (three exclamation points in the original). The next morning, July 1, at 8:44 a.m., the certificate was emailed to Jirka. R. 40-3, Evelyn Full Email. The certificate lists Vita Food as the certificate holder and is dated July 1, 2011. R. 40-2, Cert. Insurance. Painters asserts that it caused the certificate to be issued after receiving a request that was made by someone at Vita Food's on the afternoon of June 30 following Ovando's fall; Vita Food purports to challenge this assertion by pointing out that there is no evidentiary support in the record to show that it made the request at that time. PSOF ¶¶ 22, 23; Def.'s Resp. PSOF ¶¶ 22, 23.

## II. Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550

5

U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Discussion

To begin, it is undisputed that no written agreement or contract governing Vita Food's insured-status through Painters' policy with Cincinnati ever existed. DSOF ¶ 7; Pl.'s Resp. DSOF ¶ 7. Cincinnati argues that it is entitled to summary judgment because Vita Food cannot show that there was an oral agreement in place requiring Painters to add Vita Food as an additional insured or, alternatively, even if an oral agreement existed, Vita Food does not qualify under the policy because it requested and received a certificate of insurance only after Ovando's accident. R. 39, Pl.'s Br. at 5-6. Although Cincinnati is incorrect on the first point, it prevails on the second.

Given the standard of review at the summary judgment stage, there is a genuine dispute over whether an oral agreement was reached about Painters'

6

insurance obligations as part of its painting work for Vita Food. Cincinnati believes that Vita Food's reliance on the affidavit and deposition testimony of Vita Food's manager, Martin Morse, is insufficient to make the showing. It is true that "[c]onclusory allegations, unsupported by specific facts, will not suffice" to stave off summary judgment. *Payne*, 337 F.3d at 773 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). But Vita Food *has* put forth specific facts—Morse's avowal that oral negotiations did cover the additional-insured issue and that Painters agreed to extend its coverage (and this representation is not contradicted by prior deposition testimony, *see supra* n.3). This assertion may strike Cincinnati as self-serving, but in a classic he said, she said dispute, particularly over an oral contract, each side's assertion will always seem self-serving. All that matters is that Morse has presented a more-than conclusory account of his negotiations with Painters based on his personal knowledge. *See Payne*, 337 F.3d at 772-73; Fed. R. Civ. P. 56(c)(4). "[W]here the facts specifically averred by [a non-moving] party contradict facts specifically averred by the movant, the motion [for summary judgment] must be denied." *Lujan*, 497 U.S. at 888. Vita Food even acknowledged that its vice president, Cook, "may have" discussed the question during negotiations, DSOF ¶ 8: thus, a textbook example of a question of fact for a jury, as arbiter of credibility, to resolve. *See Johannesen v. Eddins*, 963 N.E.2d 1061, 1066 (Ill. App. Ct. 2011) (citation omitted) ("The existence of an oral contract, its terms, and the intent of the parties are questions of fact."); *see also Schrock v. Learning Curve Int'l, Inc.*, 744 F. Supp. 2d 768, 774 (N.D. Ill. 2010) (finding summary

7

judgment inappropriate where each party asserts evidence supporting its own position about contents of oral bargaining).

That said, this issue of fact is not enough to change the ultimate outcome in Vita Food's favor. The problem is that, even if it could show that there was an oral agreement for Painters to include Vita Food as an additional insured, the policy language requires more that Vita Food cannot establish. Remember that the additional-insured endorsement states that a party is covered by reason of "[a]n oral agreement or contract where a certificate of insurance showing that person or organization as an additional insured *has been issued*." Painters' Policy at 11 (emphasis added). "[P]rovided," the policy continues, that the "oral contract or agreement is … *executed prior to an 'occurrence'* or offense to which this insurance would apply." *Id.* (emphasis added). These clauses are the shoals on which Vita Food's ship flounders.

"The construction of an insurance policy's provisions is a question of law" and where "the terms in the policy are clear and unambiguous, the court must give them their plain, ordinary, popular meaning."[5] *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212, 1217 (Ill. 1992). It is the burden of the allegedly insured party to prove coverage under the terms of the policy. *See, e.g., Village of Hoffman Estates v. Cincinnati Ins. Co.*, 670 N.E.2d 874, 876 (Ill. App. Ct. 1996). Here, the policy's terms are clear and unambiguous. First, the policy language that states "where a certificate of insurance … has been issued" plainly means that an

---

[5]The parties assume that Illinois law governs, and the Court will proceed on that basis. *See Checkers Eight Ltd. P'ship v. Hawkins*, 241 F.3d 558, 561 (7th Cir. 2001).

oral agreement about coverage is only one element necessary for an additional party's insured-status to become effective. The other, contingent element is the issuance of the certificate: only if (that is, "where") one exists does the oral agreement then make any difference. What's more, the use of the past perfect tense ("has been issued") makes clear that the certificate's issuance needs to happen *before* the additional party can be considered insured. Vita Food's assertion to the contrary that no "restriction is placed on the time that the Certificate of Insurance must be issued," R. 42, Def.'s Resp. Br. at 7, is without justification. The language of the policy requires "an oral agreement or contract where a certificate … has been issued," not "an oral agreement or contract, where a certificate … shall be issued," or even "is (eventually) issued."[6] And here, the record indicates that the certificate of insurance was issued to Vita Food on July 1, 2011, meaning Vita Food was not an additionally insured party before that date, including on June 30 when Ovando was injured. *See* Cert. Insurance. Vita Food's attempts to cast doubt on this issuance date by asserting that there is no further evidence authenticating it. Def.'s Resp. PSOF ¶ 24. But Vita Food misapprehends the applicable standard of review.

---

[6]By Vita Food's reading, which requires the text to mean that the certificate "has been issued" relative to the date a claim is *eventually* filed (as opposed to relative to when the party becomes effectively insured, as the language indicates), one wonders what purpose a certificate of insurance would even serve. Rather, given that the two avenues to additional-covered status are a written contract or an oral agreement, the specification that the latter requires at least a certificate of insurance makes objective sense. The certificate is not a written contract/insurance policy in itself (indeed, the certificate issued to Vita Food specifically states that it "is issued as a matter of information only" and "does not affirmatively or negatively amend, extend, or alter the coverage afforded" by the underlying policy), but it does provide, like a written agreement, some protection against the predictable disputes, as demonstrated by this very case, about whether a party was truly covered on a certain date.

Cincinnati has met its initial burden of entitlement to summary judgment by setting forth the certificate dated July 1, and that means *Vita Food* must now set forth specific facts showing that there is a genuine issue for trial on the question of the issuance date. *Anderson*, 477 U.S. at 256. It has not.

Second, the related requirement that the oral agreement must be "executed prior to an occurrence" triggering a claim is equally damaging to Vita Food. Vita Food argues that all that matters is that the underlying oral agreement by Painters to cover Vita Food, irrespective of the certificate of insurance, was reached prior to Ovando's accident. Def.'s Resp. Br. at 7. But this interpretation stretches the language of the policy, which, in describing the "oral agreement" as needing to be executed before an occurrence, refers back to its immediately prior use of the term "oral agreement," which has a corresponding requirement of a certificate of insurance having been issued. In other words, what must be executed before any claim-producing incident is the set of two conditions already described, the oral agreement and an issued certificate of insurance. In any event, even if for some reason "oral agreement" was interpreted to mean something different from its use in the preceding clause, as Vita Food suggests, it still would not help—there still is the requirement that coverage is extended only "where a certificate has been issued." Because Vita Food cannot show that the certificate was issued before Ovando's fall, the "occurrence" in question, it cannot show that it was an insured party at that time.

## IV. Conclusion

For the reasons described above, Cincinnati's motion for summary judgment is granted and a declaratory judgment is entered in its favor that it is not obligated to defend or indemnify Vita Food in Ovando and Baez's Cook County Circuit Court action. Judgment is also necessarily entered against Vita Food's counterclaim, and the judgment also binds Nardo Ovando and Karina Baez, who were served long ago and have defaulted. *See* R. 6, 7, Waivers of Service.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: January 30, 2015